IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

| | |
|---|---|
| DISABILITY RIGHTS FLORIDA, INC. | )<br>)<br>) |
| Plaintiff, | )<br>)<br>) |
| v. | ) Case No. 4:16cv47-RH/CAS<br>) |
| JULIE JONES, in her official capacity as Secretary, Florida Department of Corrections, | )<br>)<br>)<br>)<br>) |
| Defendant. | )<br>) |

**UNITED STATES' MOTION TO INTERVENE**

The United States moves this Court for leave to intervene in this action as of right, pursuant to Fed. R. Civ. P. 24(a)(2) or, alternatively, for permissive intervention pursuant to Fed. R. Civ. P. 24(b). As grounds for this Motion, the United States states as follows:

1. Plaintiff Disability Rights Florida, Inc. has filed a complaint against the Secretary of the Florida Department of Corrections ("FDOC") alleging, *inter alia*, violations of Title II of the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. §§ 12131-12134; Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794; and their implementing regulations,

1

28 C.F.R Parts 35 and 42.  The complaint alleges that FDOC has repeatedly failed to provide effective communication for inmates who are deaf or hard of hearing, or are blind or have low vision.  FDOC has also failed to provide inmates with mobility and other disabilities the benefits of programs, services, and activities that FDOC provides to inmates without disabilities.

2. The United States satisfies the requirements for intervention as of right.  First, the United States' Motion to Intervene is timely because the litigation is in its early stages.  FDOC filed its Answer to the Complaint on June 24, 2016.  Discovery does not close until July 2017, and trial is not scheduled until March 2018.  The United States' intervention will not create any delay.  Thus, intervention by the United States at this juncture will not prejudice the existing parties.

3. The United States has a substantial legal interest in the subject matter of the action because it involves claims asserted under Title II of the ADA and under Section 504.  The United States Department of Justice ("Department") has key regulatory and enforcement responsibilities under Title II of the ADA and Section 504.  As such, the Department plays a unique role in enforcing and interpreting these statutes and their implementing regulations on behalf of the public interest.

4. Disposition of the action without the United States' participation may impede its enforcement and regulatory interests. The outcome of this case implicates *stare decisis* concerns that warrant the United States' intervention.

5. The United States' interests are not adequately protected by the existing parties to the litigation. Because the United States represents the public interest on a national scale, its interests do not necessarily align with the interests represented by private plaintiffs.

6. The United States also satisfies the requirements for permissive intervention because its claims against the defendant have questions of law and fact in common with the claims and facts at issue in the main action, and the action involves the interpretation of statutes that the Attorney General is entrusted by Congress to administer.

7. Further support for this Motion is set forth in the below Memorandum of Law.

## MEMORANDUM OF LAW IN SUPPORT OF UNITED STATES' MOTION TO INTERVENE

### I. INTRODUCTION

Plaintiff filed its complaint in this Court on January 26, 2016. In the complaint, Plaintiff set forth in great detail facts in support of its allegations that FDOC has discriminated against inmates with disabilities in violation of, *inter alia,* the ADA and Section 504. FDOC filed its Answer on June 24, 2016.

The United States' proposed Complaint in Intervention (attached hereto as Exhibit A) alleges that FDOC has repeatedly failed to provide effective communication for inmates who are deaf or hard of hearing, or are blind or have low vision.  FDOC has also failed to provide inmates with disabilities the benefits of the programs, services, and activities that FDOC provides to inmates without disabilities.  As a result, the United States alleges that FDOC is in violation of Title II of the ADA and Section 504.

Congress enacted the ADA in 1990 "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities."  42 U.S.C. § 12101(b)(1); Section 504 has the same purpose for federally funded programs.  As Congress stated in the Findings and Purposes of the ADA, "discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, *institutionalization*, health services, voting, and access to public services."  42 U.S.C. § 12101(3) (emphasis added).  In all of these areas, "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers . . . and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." *Id.* § 12101(5).  Congress sought "to provide clear, strong, consistent, enforceable

standards addressing discrimination against individuals with disabilities," 42 U.S.C. § 12101(b)(2), and explicitly stated that one of the purposes of the ADA was "to ensure that the Federal Government plays a central role in enforcing the standards established [in the Act] on behalf of individuals with disabilities…." 42 U.S.C. § 12101(b)(3). The United States' prominent enforcement role in enforcing laws that prohibit discrimination on the basis of disability is reflected in the authorization given the Attorney General to commence a legal action when prohibited discrimination takes place. 42 U.S.C. § 12133; 29 U.S.C. § 794a(a)(2).

The Department of Justice thus has a unique role in enforcing and interpreting Title II, Section 504, and their implementing regulations on behalf of the broad public interest. This case directly implicates the United States' interest in enforcing the ADA and Section 504.

## II. ARGUMENT

### A. The United States Satisfies the Requirements for Intervention of Right

Under Fed. Rule Civ. P. 24(a)(2), upon timely application, anyone shall be permitted to intervene in an action when the applicant shows:

> (1) his application to intervene is timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) his interest is represented inadequately by the existing parties to the suit.

5

*Fox v. Tyson Foods, Inc.*, 519 F.3d 1298, 1302-03 (11th Cir. 2008) (quoting *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989)).

Here, the United States' request for intervention satisfies the requirements of Rule 24(a)(2) for intervention as of right.

### 1.     The United States' Motion to Intervene is Timely

The Eleventh Circuit has identified several factors relevant to determining whether a request for intervention is timely:

> (1) the length of time during which the proposed intervenor knew or reasonably should have known of the interest in the case before moving to intervene; (2) the extent of prejudice to the existing parties as a result of the proposed intervenor's failure to move for intervention as soon as it knew or reasonably should have known of its interest; (3) the extent of prejudice to the proposed intervenor if the motion is denied; and (4) the existence of unusual circumstances militating either for or against a determination that their motion was timely.

*Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1259 (11th Cir. 2002) (citing *Chiles*, 865 F.2d at 1213).

This Circuit has recognized that the requirement of timeliness "must have accommodating flexibility toward both the court and the litigants if it is to be successfully employed to regulate intervention in the interest of justice." *U.S. Army Corps of Eng'rs*, 302 F.3d at 1259 (quoting *McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1074 (5th Cir. 1970)). Ample case law indicates that a motion to intervene is likely to be timely when, as here, it is filed within months of the

6

original complaint.  In *Chiles*, for example, a motion to intervene was held to be timely where the motion "was filed only seven months after [the plaintiff] filed his original complaint, three months after the government filed its motion to dismiss, and before any discovery had begun."  865 F.2d at 1213; *see also Diaz v. S. Drilling Corp.*, 427 F.2d 1118, 1125-26 (5th Cir. 1970) (motion to intervene more than a year after the action was commenced was timely when there had been no legally significant proceedings other than the completion of discovery and intervention would not cause any delay in the process of the overall litigation);[1] *Anderson v. United States*, No. 14-cv-1182, 2015 U.S. Dist. LEXIS 167398, at *2 (N.D. Ala. 2015) (where there is no prejudice to the parties, intervention is permissible even a year after litigation has commenced, and even though discovery has closed); *DeVault v. Isdale*, No. 15-cv-135, 2015 U.S. Dist. LEXIS 137684, at *9 (M.D. Fla. 2015) (when intervenor files a Motion to Intervene in advance of the defendant's deadline for production, the ensuing prejudice is "minimal"); *Davis v. S. Bell Tel. & Tel. Co.,* 149 F.R.D. 666, 670 (S.D. Fla. 1993) (allowing intervention when, "[a]lthough the case has been pending for more than two years, discovery on the merits has not been completed and dispositive motions have not

---

[1] Fifth Circuit cases that were adjudicated prior to the close of business on September 30, 1981, are considered to be binding precedent in the Eleventh Circuit. *Bonner v. Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

been filed. As a consequence, there is no indication that this litigation is close to conclusion.").

Applying these factors, the United States' application for intervention is timely. The complaint was filed January 26, 2016. FDOC filed its Answer on June 24, 2016. Under the scheduling order, discovery is not scheduled to close until July 2017, and the trial is not scheduled until March 2018. This litigation remains at an early stage and the United States' intervention will not prejudice either party.

### 2. The United States has a Substantial Legal Interest in this Litigation

For an applicant's interest in the subject matter of the litigation to be cognizable under Rule 24(a)(2), it must be "direct, substantial and legally protectable." *U.S. Army Corps of Eng'rs*, 302 F.3d at 1249; *see also Chiles*, 865 F.2d at 1212-13 (noting that the focus of a Rule 24 inquiry is "whether the intervenor has a legally protectable interest in the litigation."). The inquiry on this issue "is 'a flexible one, which focuses on the particular facts and circumstances surrounding each [motion for intervention].'" *Chiles*, 865 F.2d at 1214 (quoting *United States v. Perry Cnty. Bd. of Educ.*, 567 F.2d 277, 279 (5th Cir. 1978)).

The United States has a legally protectable interest in this litigation. As the agency with primary enforcement and regulatory responsibilities under the ADA, the United States Department of Justice has a significant interest in the

enforcement and interpretation of Title II.  42 U.S.C. §§ 12133-34; 28 C.F.R., pt. 35, subpts. F, G.  The Department also coordinates implementation and enforcement by executive agencies of Section 504, Exec. Order No. 12,250, 3 C.F.R. 298 (1980 comp.), 28 C.F.R. pt. 41; has regulatory and enforcement authority for Section 504 with respect to programs it administers or funds (including FDOC), 29 U.S.C. § 794a; 28 C.F.R. pts. 39 and 42; and is authorized to commence a legal action against any federally funded entity to remedy a violation of Section 504, 29 U.S.C. § 794a.  Thus, the Department also has a significant interest in the enforcement and interpretation of Section 504.

The Department has investigated and settled numerous disability discrimination matters against correctional facilities.[2]  The United States has a direct and substantial interest in the interpretation of its regulations, and the United States' participation in litigation involving the interpretation of Title II, Section 504, and their implementing regulations is critical.  Moreover, the Department of Justice's extensive experience with the statutes and regulations at issue will benefit the existing parties in presenting facts and arguments that will help frame the issues.

---

[2] *See, e.g.,* Dakota County, MN Settlement Agreement; County of Erie NY and the Erie County Sheriff's Office Settlement Agreement; Sheriff of St. Lucie County Settlement Agreement; Nevada Department of Corrections Letter of Findings; South Carolina Department of Corrections Consent Decree; and numerous other examples available at https://www.ada.gov/enforce_current.htm.

### 3. The Disposition of the Instant Litigation May Impair the United States' Ability to Protect Its Interest

The United States' ability to protect its substantial legal interest would be impaired absent intervention. Federal decisions interpreting and applying the provisions of the ADA and Section 504 are an important enforcement tool. The outcome of this case, including the potential for appeals by existing parties, implicates *stare decisis* concerns that warrant the United States' intervention. *See Stone v. First Union Corp.*, 371 F. 3d 1305, 1309-10 (11th Cir. 2004) (recognizing that potential for a negative *stare decisis* effect "may supply that practical disadvantage which warrants intervention of right") (citing *Chiles*, 865 F.2d at 1214); *see also United States v. City of Los Angeles*, 288 F.3d 391, 400 (9th Cir. 2002) (holding that amicus curiae status may be insufficient to protect the rights of an applicant for intervention "because such status does not allow [the applicant] to raise issues or arguments formally and gives it no right of appeal"). While the existing parties to the litigation will not be prejudiced by the United States' intervention, the United States will be prejudiced if its request for intervention is denied.

### 4. The Existing Parties Do Not Adequately Represent the United States' Interests

The fourth and final element to justify intervention of right is inadequate representation of the proposed intervenor's interest by existing parties to the

litigation. This element is satisfied if the proposed intervenor "shows that representation of his interest 'may be' inadequate." *Chiles*, 865 F.2d at 1214 (quoting *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n. 10 (1972)). The burden on the proposed intervenor to show that existing parties cannot adequately represent its interest is "minimal." *Stone*, 371 F.3d 1311; *U.S. Army Corps of Eng'rs*, 302 F.3d at 1259 (citing *Trbovich*, 404 U.S. at 538 n.10). Any doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenors because it allows the court to resolve all related disputes in a single action. *Loyd v. Ala. Dep't of Corr.*, 176 F.3d 1336, 1341 (11th Cir. 1999); *Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993).

The United States' interest is in the enforcement of the ADA and Section 504 to advance the public interest in eliminating discrimination against inmates with disabilities in Florida's state prisons. Plaintiff may not represent the Department's views on the proper interpretation and application of Title II and Section 504 and the regulations the Department promulgated. As the Ninth Circuit recognized in a case allowing private parties to intervene alongside government agency defendants, "[t]he interest of government and the private sector may diverge." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 823 (9th Cir. 2001); *see also San Juan Cnty. v. United States*, 503 F.3d 1163, 1228-29 (10th Cir.

2007) (same); *Scotts Valley Band of Pomo Indians of the Sugar Bowl Rancharia v. United States*, 921 F.2d 924, 926-27 (9th Cir. 1990) (recognizing that city government's interest could not be adequately represented by another entity).

In summary, the United States meets the Rule 24(a) requirements for intervention as of right.

### B. The United States Meets the Requirements for Permissive Intervention

Fed. R. Civ. P. 24(b) provides for permissive intervention as an alternative basis for the United States' intervention in this action. Rule 24(b) states, in relevant part:

> (1) On timely motion, the court may permit anyone to intervene who:
> (A) is given a conditional right to intervene by a federal statute; or
> (B) has a claim or defense that shares with the main action a common question of law or fact.
> (2) On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on:
> (A) a statute or executive order administered by the officer or agency; or
> (B) any regulation, order, requirement, or agreement issued or made under the statute or executive order.
> (3) In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

The Eleventh Circuit has established a two-part test to guide the Court's discretion as to whether a party may intervene pursuant to Rule 24(b)(2): the applicant must show that "(1) his application to intervene is timely; and (2) his claim or defense and the main action have a question of law or fact in common."

*Chiles*, 865 F.2d at 1213 (citing *Sellers v. United States*, 709 F.2d 1469, 1471 (11th Cir. 1983)).

As discussed above, the United States' application for intervention in this litigation is timely and the United States' participation would neither unduly delay the proceedings nor prejudice the adjudication of the rights of the original parties. Additionally, the United States' claims against the defendant share common questions of law with Plaintiff's claims, and rest upon common facts. Indeed, the United States' proposed complaint incorporates the facts as alleged in Plaintiff's complaint. *See infra* n.3. By avoiding multiple lawsuits and coordinating discovery, intervention will lend efficiency to the proceedings.

Moreover, the plain text of Rule 24(b)(2) permits intervention by a government agency if a party's claim is based on a statute administered by the agency. As the agency tasked with enforcing Title II of the ADA and Section 504 (with respect to programs it funds, including FDOC), the Department of Justice's intervention falls squarely within the language of Rule 24(b)(2). *See Halderman v. Pennhurst State Sch. & Hosp.*, 612 F.2d 84, 92 (3d Cir. 1979) (rev'd on other grounds) (stating that Rule 24(b)(2) makes "specific provision for intervention by governmental agencies interested in statutes, regulations or agreements relied upon by the parties in the action"); *Disability Advocates, Inc. v. Paterson*, No. 03-cv-3209, 2009 WL 4506301, at *2 (E.D.N.Y. Nov. 23, 2009) (permitting intervention

by the United States under Rule 24(b)(2) in an ADA Title II case). Accordingly, the United States meets the requirements for permissive intervention.

### III.    CONCLUSION

For the foregoing reasons, the Court should grant the United States' Motion to Intervene (i) as a matter of right pursuant to Rule 24(a)(2), Federal Rules of Civil Procedure, or, in the alternative, (ii) permissively pursuant to Rule 24(b) Federal Rules of Civil Procedure.

Dated:  January 9, 2017

        Respectfully submitted,

        LORETTA E. LYNCH
        Attorney General

CHRISTOPHER CANOVA        VANITA GUPTA
United States Attorney        Principal Deputy Assistant Attorney
Northern District of Florida        General
        EVE L. HILL
        Deputy Assistant Attorney General
        Civil Rights Division

        REBECCA B. BOND
        Chief
        KATHLEEN WOLFE
        Special Litigation Counsel
        MELLIE H. NELSON
        Supervising Trial Attorney
        Disability Rights Section


        /s/ Elisabeth Oppenheimer
        DOUGLAS KERN
        OH Bar No. 72864
        ELISABETH OPPENHEIMER
        MA Bar No. 686312
        Trial Attorneys
        Disability Rights Section (NYA)
        U.S. Department of Justice
        950 Pennsylvania Ave., N.W. – NYA
        Washington, DC  20530
        (202) 307-0063 (office)
        (202) 305-4486 (Fax)
        doug.kern@usdoj.gov
        elisabeth.oppenheimer@usdoj.gov

        *Counsel for Plaintiff-Intervenor*
        *United States of America*

## WORD COUNT

I certify that the word count for this document is 3,023 words.

/s/ Elisabeth Oppenheimer
Elisabeth Oppenheimer

## CERTIFICATE OF SERVICE

I hereby certify that I have filed this Motion electronically via CM/ECF on this 9th day of January, 2017, which will result in service upon all counsel of record.

/s/ Elisabeth Oppenheimer
Elisabeth Oppenheimer

## CERTIFICATE OF CONFERENCE

I hereby certify that I conferred with counsel for both parties regarding the foregoing Motion pursuant to Local Rule 7.1(B). Plaintiff Disability Rights Florida does not oppose the motion. Defendant Julie Jones, in her official capacity as Secretary, Florida Department of Corrections, opposes the motion.

/s/ Elisabeth Oppenheimer
Elisabeth Oppenheimer